**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

JACK DALRYMPLE; ROSEMARY DALRYMPLE; DAVID
A. ADAMS; R.D. "BUDDY" ADAMS; KENNETH BALES;
PATRICIA BALES; GERALD L. BASER; BETTIE L.
BASER; LARRY J. BECKER; ROBERT K. BERRY; SUSAN
M. BERRY; MARK E. BLANKENSHIP; BOARD OF
COMMISSIONERS OF OTTAWA COUNTY, OKLAHOMA;
CHARLES BOWLING; KATHY BOWLING; CALVIN
BRADY; CHET BREWINGTON and SUSAN
BREWINGTON, d/b/a Thunderbird Motel; EDNA OFFUTT
BRYANT; GEORGE CAMPBELL; CAROL SUE
CAMPBELL; KENNETH CASS; MAXINE CASS; MARVIN
CHAMPLIN; JOYCE CHAMPLIN; DON CHILDERS; DEE
CHILDERS; CITY OF MIAMI, OKLAHOMA, a municipal
corporation; H. DALE CONARD; SHERRY DAVIS;
CHESTER DESILVA; DEBBIE DESILVA; E.G.
VENTURES, INC.; MAXINE FERGUSON; EARL B.
FERRIS; KENNETH FERRIS; DIANN FERRIS; HOWARD
W. HOOVER; STEPHEN L. HUNTER; DEBBIE L.
HUNTER; SMITHY JAMESON; K.C. JEFFRIES; GARY B.
JENKINS; BETTY A. JENKINS; STEVE KRESYMAN,
d/b/a/ Miami Car Wash; ROY K. LACEN; IDA M. LACEN;
JEFFREY LAVINE; JOHNIA LAVINE; BRUCE
LAWRENCE; REGINA LAWRENCE; FAYE LESTER;
VERA DOWTY LOWERY; TIM LUCAS; RHONDA
LUCAS; CHRIS MABURY; DEBRA MABURY; NADINE
MACY; JUSTIN MAHURIN; BECKY MAHURIN; LOUIS E.
MATHIA, d/b/a Riverside Auto Salvage; JEFFRY MCCOOL
and CAROLYN MCCOOL, d/b/a Vettes and Vans; E.W.
MCRAE; MIAMI ANIMAL HOSPITAL, INC.; MIAMI TIRE
SERVICE, INC.; MIAMI TRIBE OF OKLAHOMA; MID-
AMERICA LAND, GRAIN & CATTLE COMPANY; LEO J.
MILLS; VIRGINIA D. MILLS; JIMMIE MOONEYHAM;

Nos. 96-5113
96-5114
96-5115

ALAN E. NEWKIRK; MARY NIFFEN; TAMMY NIFFEN; ROBERT E. PATTERSON; DAVID D. PAYNE; ROBERT PEWITT; ANN PEWITT; TIM POTTER, d/b/a Potter Landscaping & Nursery; JAMES REDDEN; CATHY REDDEN; WAYNE E. ROBERTS; CLAUDE ROGERS; JOSEPH A. ROSIN; ROSIN HERITAGE, INC.; PAULA S. RUTLEDGE; NICK A. SHADE; MARIAN SHIPMAN; GARY ROY SHOULTZ, d/b/a Gary's Barbecue and Deli; ROBERT L. SILVERSMITH; RUTH SILVERSMITH; BESS M. STEPHENS; EDISON B. STEPP; PATRICIA STEVENS; RANDY STONER; GEORGE S. STUNKARD, d/b/a Blaster's Arcade; GLEN SUMMERS; DEAN TRONE; TERESA TRONE; BERT VANATTA; C.H. VANATTA; DONALD VAUGHN; LORETTA J. VAUGHN; EMMA VAUGHN; EVERETT R. WAGONER; MADELEINE WAGONER; JOSEPH WALDEN; HAROLD WATSON; BILL E. WAY; SHELBY WAY; MAYNARD WEATHERS; JOANN WEATHERS; LAHOMA WEBB; MICHAEL WEBB; RUTH WEBB; WAYNE L. WEBB; NANCY C. WEBB; R. NEIL WELLS; JAMES L. WETZEL; HARMON WILEY; ANNA LEE WILEY; JOHN D. WILHOIT, Jr.; ROSE M. WILHOIT; DAVID WILKINSON; JAMES WORLEY; CHERYL WORLEY; individually and as representatives of a class consisting of all persons and entities located upstream of Pensacola Dam who have been injured by floods caused or increased by the Dam since September 1992,

       Plaintiffs-Appellees,

v.

GRAND RIVER DAM AUTHORITY, and RONALD COKER, in his official capacity as General Manager and Chief Executive Officer of the Grand River Dam Authority,

       Defendants-Third-Party Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA ex rel. FEDERAL
ENERGY REGULATORY COMMISSION, and UNITED
STATES ARMY CORPS OF ENGINEERS,

Third-Party Defendants-Appellees.

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. Nos. 94-C-970-H, 94-C-1092-H, and 94-C-1091-H)**

---

N. Larry Bork (Wayne T. Stratton with him on the brief) of Goodell, Stratton, Edmonds & Palmer, L.L.P., Topeka Kansas; and Frank M. Hagedorn (Graydon D. Luthey with him on the brief) of Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Oklahoma, for Plaintiffs-Appellees.

Janet Kay Jones (Susan Tomasky, General Counsel, and Joseph S. Davies, Acting Solicitor, with her on the brief), Federal Energy Regulatory Commission, Washington, D.C., for Third-Party Defendant-Appellee Federal Energy Regulatory Commission.

Philipe Pinnell (Stephen C. Lewis, United States Attorney, with him on the brief), Assistant United States Attorney, Tulsa, Oklahoma, for Third-Party Defendant-Appellee United States Army Corps of Engineers.

Robert A. Franden (Jody R. Nathan of Feldman, Franden, Woodard, Farris & Taylor, Tulsa, Oklahoma; and Allen B. Pease of Grand River Dam Authority, Vinita, Oklahoma, with him on the brief) of Feldman, Franden, Woodard, Farris & Taylor, Tulsa, Oklahoma, for Defendants-Third-Party Plaintiffs-Appellants.

---

Before, **BRORBY**, **McWILLIAMS**, Circuit Judges, and **BLACK**,[*] District Judge.

---

[*] The Honorable Bruce D. Black, District Judge for the District of New Mexico, sitting by designation.

**BRORBY**, Circuit Judge.

———————————

Appellant, Grand River Dam Authority (the "Authority"), is a conservation and reclamation district created pursuant to Oklahoma statute "for the purpose of utilizing the waters of Grand River and its tributaries." *Grand River Dam Auth. v. Wyandotte Bd. of Educ.*, 147 P.2d 1003, 1004 (Okla. 1943) (citing Okla. Stat. tit. 82, § 861(1941)), *cert. denied*, 322 U.S. 733 (1944); *Teague v. Grand River Dam Auth.*, 425 F.2d 130, 132 (10th Cir. 1970). Acting as a state agency, the Authority owns and operates the Pensacola Hydroelectric Project/Pensacola Dam, in accordance with the terms and conditions of its Federal Energy Regulatory Commission ("FERC") license and the Federal Power Act, 16 U.S.C. § 799.

In March 1994, the Wagoner and Roberts plaintiffs filed separate suits against the Authority for property damage resulting from flooding along the Spring River in 1993. The Wagoner and Roberts plaintiffs later amended their petitions to include flood damage that occurred in 1994. In September 1994, the Dalrymple plaintiffs brought a class action suit against the Authority for property damage suffered as a result of the increased elevation and duration of flooding on the Neosho River from 1992-94. The Neosho and Spring rivers combine to form the Grand River, which is impounded by the Pensacola Dam. Plaintiffs filed their

complaints in Oklahoma state court; collectively, they asserted claims of inverse condemnation, consequential damage to private property for public use, breach of contract, strict liability, trespass, and nuisance. The Dalrymple plaintiffs also sought injunctive relief as an alternative to their damage claims.

The Authority removed the actions to federal district court alleging proper jurisdiction under 28 U.S.C. §§ 1441(b) and 1442(a)(1). In response to each action, the Authority also filed third party complaints against FERC and the United States Army Corps of Engineers (the "Corps"), seeking indemnification for any damages ultimately awarded to the Plaintiffs.

Upon Plaintiffs' motions, and after some discussion at a status hearing, the district court remanded the cases to state court by orders dated April 2, 1996. The district court dismissed the Authority's third party claims against the federal agencies by separate orders on the same date.[1] The Authority appeals both rulings in each Plaintiff's action. The appeals have been consolidated for purposes of briefing and disposition.

---

[1] The district court entered substantially the same orders in each docketed case. Because the evidence and argument supporting remand and dismissal were virtually identical in each suit, we will address the remand orders collectively and the dismissal orders collectively.

Because we conclude the remand orders were based to a fair degree upon the district court's finding it lacked subject matter jurisdiction to hear the cases, we are statutorily precluded from reviewing those orders, on appeal or otherwise. 28 U.S.C. § 1447(d). We therefore grant Plaintiffs' motions to dismiss the Authority's appeal of the remand orders.

Our jurisdiction to review the district court's orders dismissing the Authority's third party complaints against FERC and the Corps is not likewise restricted.[2] Reviewing those orders de novo, *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997), we affirm.

---

[2] It is clear from the record that while they were filed on the same date, the dismissal orders were drafted prior to and separate from the remand decisions. The remand orders mentioned the dismissals, yet in no way were predicated on the dismissals. The Authority filed its notices of removal prior to filing its third party complaints and thus never relied on its claims against the federal agencies as grounds for removal. The Supreme Court has held even if a dismissal leads to a remand, it is still permissible to review the dismissal order. *Waco v. United States Fidelity & Guar. Co.*, 293 U.S. 140, 143 (1934) (district court cannot prevent appellate review of a final collateral order by contemporaneously remanding a case to state court). Thus, we perceive no barrier to our review of the dismissal orders in this case.

## DISCUSSION

*Remand of Plaintiffs' Cases to State Court*

Relying on 28 U.S.C. § 1447(d),[3] Plaintiffs seek to dismiss this portion of the appeal, claiming we have no jurisdiction to review the remand orders. The threshold issue, therefore, is one of appellate jurisdiction.[4]

In determining whether § 1447(d) deprives us of jurisdiction to review the district court's remand orders, we first acknowledge the application of § 1447(d) is not as broad as its language suggests. Appellate review is barred by § 1447(d) only when the district court remands on grounds permitted by § 1447(c).[5] *Things*

---

[3] 28 U.S.C. § 1447(d) states:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 [civil rights] of this title shall be reviewable by appeal or otherwise.

[4] The Authority raises several substantive challenges to the remand orders. Because we hold we are without jurisdiction to review those orders, we do not address those challenges.

[5] 28 U.S.C. § 1447(c) reads:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks

*Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-28 (1995); *Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 345-46 (1976). An explicit reference to § 1447(c) does not automatically render a remand order nonreviewable, however. *Archuleta v. Lacuesta*, 131 F.3d 1359, 1362 (10th Cir. 1997). Nor does the absence of such a reference automatically confer appellate jurisdiction over a remand order. In order to evaluate the reviewability of the district court's remand orders, we must independently review the record to determine the actual grounds upon which the district court believed it was empowered to remand. *Id.*

One of the grounds for remanding a case under § 1447(c) -- the ground at issue here -- is a determination the federal district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). We have held if a "remand order was based to a fair degree upon the court's finding that it lacked subject matter jurisdiction to hear the case," such order is rendered nonreviewable under § 1447(d). *Flores v. Long*, 110 F.3d 730, 733 (10th Cir. 1997); *see also Archuleta,*131 F.3d at 1363. This remains true even if the district court's jurisdictional determination appears erroneous, so long as that determination was made in good faith. *Archuleta*, 131 F.3d at 1362-63*; Flores*, 110 F.3d at 732-33.

_____

subject matter jurisdiction, the case shall be remanded.

The Authority removed Plaintiffs' cases to federal court alleging proper federal jurisdiction under 28 U.S.C. §§ 1441(b) and 1442(a)(1). Section 1441(b) provides in relevant part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

To support removal under § 1441(b), the Authority argued Plaintiffs' claims amount to federal constitutional claims because the Pensacola Dam is on navigable waters and is subject to federal government control pursuant to the Commerce Clause.

Section 1442 provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[6]

---

[6] This provision was amended after the Authority removed Plaintiffs' cases to federal court. The amendment, which legislatively reversed the Supreme Court's decision in *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72 (1991), H.R. Rep. No. 104-798 (1996), 1996 WL

The Authority claimed it was entitled to removal under this provision because it effectively acted as a government contractor or federal agent, which at all times operated the Pensacola Dam and reservoir according to the terms and conditions of its FERC license and, during flood stage, pursuant to the Corps' directives.[7]

In remanding these cases, the district court concluded there was no basis for removal under either § 1441(b) or § 1442(a)(1). According to the district court, removal under § 1441(b) was not warranted because Plaintiffs' various causes of action do not implicate any federal right or immunity -- there simply is no federal controversy apparent on the face of the Plaintiffs' complaints. With respect to § 1442(a)(1), the court held the Authority failed to aver a colorable federal immunity defense, as is necessary to support removal by an officer or agency of the United States, or any person acting under such officer or agency. The court did not explicitly refer to § 1447(c) in its remand orders; however,

_____

532692 at 56-57, by extending removal jurisdiction to actions against federal agencies as well as those against federal officers, has no effect on our disposition in this case.

[7] According to the Authority, FERC establishes target levels for the reservoir throughout the year. When reservoir elevation is projected to reach flood state -- 745 feet or more -- the Authority operates the dam as directed by the Corps. The Corps directs flood control operations because the Neosho River, as part of the Arkansas River basin, is included in the federal flood control program designed to protect residents of Missouri, Kansas, Arkansas and Oklahoma.

Plaintiffs specifically requested relief pursuant to § 1447(c) in their motions to remand.

Having independently reviewed the record, we are convinced the district court based its remand decision upon the belief it lacked subject matter jurisdiction to hear Plaintiffs' claims. The remand orders at issue clearly do not reflect the typical nonjurisdictional determination involving a discretionary remand of supplementary or pendent claims, venue, abstention, comity, or the waiver of opportunity to challenge a procedurally irregular removal. Instead, the orders address key issues directly related to whether the district court could have exercised subject matter jurisdiction over the cases -- the presence of a federal question on the face of the plaintiffs' complaints, and/or the presence of a federal question in the form of a colorable federal immunity defense.

On its face, § 1441(b) requires a district court to determine whether it has "original jurisdiction" over the case at bar. Thus, an inquiry into the propriety of removal under § 1441(b) necessarily incorporates an inquiry into subject matter jurisdiction. An inquiry into the propriety of removal under § 1442(a)(1) similarly encompasses a subject matter jurisdiction determination since removal under that section is predicated not just on the federal character of the defendant,

but also on the averment of a defense grounded in federal law. *See Mesa v. California*, 489 U.S. 121, 136, 139 (1989). Accordingly, we cannot see how the district court's remand orders could be characterized as based on anything but a lack of subject matter jurisdiction as contemplated by § 1447(c).[8] We therefore are precluded by § 1447(d) from reviewing those orders. Plaintiffs motions to dismiss the Authority's appeal of the remand orders are granted.

*Dismissal of Third Party Complaints*

The Authority filed third party complaints against both FERC and the

---

[8] We acknowledge the Fifth Circuit's efforts to characterize district court remand decisions as procedurally based so as to apply waiver principles and thereby avoid nonreviewability. *See Hopkins v. Dolphin Titan Int'l, Inc.*, 976 F.2d 924 (5th Cir. 1992); *In re Digicon Marine, Inc.*, 966 F.2d 158 (5th Cir. 1992); *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540 (5th Cir.), *cert. denied*, 502 U.S. 963 (1991). We fear such maneuvering unnecessarily convolutes the law in this area and runs afoul of strong congressional policy against review of remand orders "in order to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues." *Thermtron Prod., Inc.*, 423 U.S. at 351.

As stated above, we believe a remand decision based on improper removal under §§ 1441(b) and 1442(a)(1) is appropriately characterized as a decision based on a lack of subject matter jurisdiction, not a procedural defect. *But see Archuleta*, 131 F.3d at 1365 (Baldock, J. dissenting). Nevertheless, to the extent §§ 1441(b) and 1442(a)(1) could be considered procedural limitations, a remand order issued pursuant to a timely motion asserting a defect in the removal procedure also is precluded from appellate review. *Petrarca*, 516 U.S. at 127-28. The Authority does not contest the fact Plaintiffs' filed their motions for remand within the thirty days allotted by § 1447(c).

Corps, seeking indemnification from the United States for any liability the Authority may have to the Plaintiffs. Each agency responded with a motion to dismiss on multiple grounds: (1) under both the Federal Tort Claims Act, 28 U.S.C. § 2680(a), and the jurisdictional limits of 28 U.S.C. § 1346, the court lacked subject matter jurisdiction, (2) sovereign immunity barred the Authority's third party claims, and (3) the Authority failed to state a cause of action upon which relief could be granted.

The district court granted the motions for lack of subject matter jurisdiction. The court first concluded, and the Authority conceded, the federal agencies were immune from any liability to the Authority deriving from Plaintiffs' tort claims. To the extent the United States could be liable to indemnify the Authority for damages related to the Plaintiffs' inverse condemnation claims,[9] the district court concluded that because each Plaintiff

---

[9] We note the district court characterized Plaintiffs' inverse condemnation claims as Fifth Amendment claims. (Apt. App. Vol. II at A915.) Plaintiffs clarify they filed their inverse condemnation claims under Article II, Section 24 of the Oklahoma Constitution and Okla. Stat. tit. 27, § 12, not the federal Constitution. (No. 96-5113, Reply to GRDA's Memorandum in Opposition to Motion of Plaintiffs to Dismiss Action Pursuant to 10th Cir. R. 27.2.1 at 3; Apt. App. Vol. I at A29-69 ¶¶ 35-48; Vol. II at A1001-07 ¶¶ 26-29; Vol. III at A1194-98 ¶¶ 20-22.) This discrepancy in no way affects the district court's determination that jurisdiction over the Authority's third party claims resides solely within the United States Court of Federal Claims.

claimed damages in excess of $10,000, the amount in controversy exceeded the $10,000 limit within which it can exercise jurisdiction pursuant to 28 U.S.C. § 1346(a)(2). Thus, according to the district court, the United States Court of Federal Claims has exclusive subject matter jurisdiction over the Authority's third party indemnification actions. 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1).

The Authority asserts the district court erred in finding Plaintiffs' inverse condemnation claims exceeded the $10,000 jurisdictional limit. The Authority further argues dismissal was improper since (1) indemnity is a cause of action available against the United States, (2) the federal government bears the ultimate responsibility for purchasing the lands necessary for operation of the dam during flooding, and (3) the Authority's liability is predicated solely on activities it undertook as an agent of the federal government. While these arguments may bear superficial appeal, we agree with the district court they overlook fundamental jurisdictional infirmities.

Like the district court, we begin from the premise that FERC and the Corps, as United States defendants, are immune from suit, absent an expressed waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also Talbot v. Richman (In re Talbot)*, 124 F.3d 1201, 1206 (10th Cir. 1997)

(citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).  As the district court indicated, the Authority conceded there is no waiver of immunity from liability related to Plaintiffs' tort claims.  The Authority therefore based its indemnification claim against the federal government solely on liability exposure related to Plaintiffs' inverse condemnation claims.  In so doing, however, the Authority failed to identify any applicable statutory waiver of sovereign immunity from liability deriving from inverse condemnation claims, or to otherwise explain why the United States' waiver of sovereign immunity for actions based on the United States Constitution or express or implied contract, *see* 28 U.S.C. § 1346(a)(2), necessarily pertains to its indemnification claims.

As legal grounds to avoid sovereign immunity, the Authority seems to rely merely on its assertion indemnity is a cause of action available against the United States, its self-described role as the United States' agent when operating the Pensacola Dam, and the fact Congress appropriated monies in 1996 to purchase additional land from property owners impacted by flooding in the vicinity of the Pensacola Dam.  We are not convinced such grounds are adequate.  Nevertheless, because we agree with the district court the amount in controversy is the dispositive jurisdictional issue, we will assume, without deciding, the Authority's indemnification claims based on liability exposure related to Plaintiffs' inverse

condemnation claims fall within the scope of 28 U.S.C. § 1346(a)(2).

It is beyond dispute § 1346(a)(2) limits federal district court jurisdiction to claims against the federal government not exceeding $10,000; the Court of Federal Claims has exclusive jurisdiction over such claims in excess of $10,000. 28 U.S.C. §§ 1346 and 1491. The Authority asserts the district court erred in its jurisdictional ruling since the court had no basis upon which to determine the amount of damages attributable to Plaintiffs' inverse condemnation claims, apart from their other claims. The Authority also suggests the district court could retain jurisdiction over the third party claims since Plaintiffs sought injunctive relief. Even if the Court of Federal Claims does have exclusive jurisdiction, the Authority argues its claims should have been transferred pursuant to 28 U.S.C. § 1631, not dismissed.

The issue before us is whether the district court has jurisdiction over the Authority's third party complaints, not Plaintiffs' complaints. Thus, it is of no significance that some Plaintiffs requested injunctive relief. The amount of Plaintiffs' damage claims is significant, however, because those claims are the reason for the Authority's third party indemnity actions against FERC and the Corps. The record confirms each plaintiff sought damages in excess of $10,000.

The record further illustrates there is no need to allocate Plaintiffs' damage claims to each different theory of recovery, since Plaintiffs prayed for full recovery in excess of $10,000 on *any* one of their alternative claims. Even more telling, the Authority did not attempt to quantify its liability exposure *vis-à-vis* Plaintiffs' inverse condemnation claims. Rather, it sought indemnification from the United States for any and all amounts the Plaintiffs recover from the Authority. The amount in controversy as reflected by each third party complaint thus exceeds $10,000. Assuming the Authority can overcome the sovereign immunity barrier and other potential obstacles,[10] jurisdiction over its indemnity claims against the United States government lies exclusively within the Court of Federal Claims.

Finally, while the district court could have transferred the Authority's third party complaints to the Court of Federal Claims pursuant to 28 U.S.C. § 1631, we perceive no error in its failure to do so. Section 1631 requires an action to be transferred "to any other such court in which the action or appeal could have been brought at the time it was filed" if the transfer "is in the interest of justice." 28 U.S.C. § 1631. The Authority provides no explanation why justice would have

---

[10] As FERC points out, the Authority's indemnity claims are inextricably linked to Plaintiffs' state law claims. The Court of Federal Claims arguably has no jurisdiction over Plaintiffs' complaints, and thus could decline to adjudicate the Authority's indemnity claims on grounds they were premature.

been served by such a transfer. Moreover, it appears the Authority could refile its third party actions in the Court of Federal Claims without penalty, should it choose to do so.

## CONCLUSION

For the foregoing reasons, we **DISMISS** the Authority's appeal of the district court's remand orders for lack of appellate jurisdiction. We **AFFIRM** the district court's dismissal of the Authority's third party complaints against FERC and the Corps.